

Louis V. Fasulo, Esq.– NY & NJ
Samuel M. Braverman, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY & CO

www.FBDMLaw.com
Sbraverman@fbdmlaw.com

July 27, 2015

Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   United States v. Robinson,
      Case No.: 14 CR 130-08 (LAP)

Dear Judge Preska:

      I submit this letter on behalf of Sean Robinson, who is scheduled to be sentenced by this Court on August 10, 2015. On May 7, 2015, Mr. Robinson appeared before the Court and pled guilty to Count One Conspiracy to Commit Robbery, in violation of 18 U.S.C. § 1951. Mr. Robinson's total offense guideline level is 37 and Criminal History Category is III, consistent with Probation's calculations. Accordingly, his suggested guideline sentence is 262- 327 months imprisonment, 1 to 3 years supervised release, and a fine of no greater of $250,000 or twice the gross loss or gain, and a $100 special assessment. I respectfully request this Court sentence Mr. Robinson to 48 months imprisonment, 3 years supervised release, and a $100 mandatory assessment fee. Mr. Robinson in unable to pay a fine.

      Sean Robinson stands before this Court for sentencing having pled guilty to participating in a conspiracy to commit a series of "smash and grab" robberies, where the goal was to steal valuable merchandise and flee quickly. In late, 2013, Mr. Robinson, along with nine co-defendants, conspired to commit a series of robberies, all while knowing his conduct was unlawful. Mr. Robinson's role, although serious and unequivocal, consisted of suggesting possible targets for the robberies, while never stepping foot in a single store. As noted in Probation's Report ("PSR"), Mr. Robinson takes full responsibility for his actions, and understands the seriousness and severity of his offense. On April 23, 2014, Mr. Robinson was arrested for his participation in the scheme and has been incarcerated at Metropolitan Correctional Center in Brooklyn, NY.

| 901 Sheridan Avenue | 505 Eighth Avenue, Suite 300 | 225 Broadway, Suite 715 | Post Office Box 127 |
|---|---|---|---|
| Bronx, New York 10451 | New York, New York 10019 | New York, New York 10007 | Tenafly, New Jersey 07670 |
| Tel (718) 293-1977 | Tel (212) 967-0352 | Tel (212) 566-6213 | Tel (201) 569-1595 |
| Fax (718) 293-5395 | Fax (201) 596-2724 | Fax (212) 566-8165 | Fax (201) 596-2724 |

Attached to this letter is a May 5, 2015 letter we received by the Government regarding a statement by a cooperating witness. In particular, the letter explains Mr. Robinson's role in the offense, and that Mr. Robinson planned these "smash and grab" robberies because he desired they be non-violent. Also attached is a hand-written letter from Mr. Robinson. A review of this letter demonstrates Mr. Robinson's concern for his family and community, despite the instant offense. He has written to the Court in hopes that Your Honor can temper punishment with mercy, and fashion a sentence that comports with all the requirements of 18 U.S.C. § 3553(a), including one that, while reflecting the seriousness of the offense and the need to deter this defendant and others, the sentence should be no greater than necessary.

### A.   18 U.S.C. § 3553(a) and *United States v. Booker*

The Supreme Court held in *United States v. Booker*, 543 U.S. 220, 258 (2005), that the district court has the *duty* to 'consider' the recommended guideline range along with the other factors listed in §3553(a). Pursuant to 18 U.S.C. §3553(a), the Court "shall impose a sentence sufficient but not greater than necessary" to comply with the purposes of sentencing. Thus, the Court must consider: (1) the nature and circumstance of the offense and history and characteristics of the defendant; (2) the need of the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public; (3) all available sentences; (4) the relevant Guidelines ranges, and (5) the need to avoid sentencing disparities. *Id*.

In *Gall v. United States*, 128 S. Ct. 586, 597 (2007), the United States Supreme Court held that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" of a reasonable sentence.

Congress and the Sentencing Commission intended the guidelines to assist courts in reaching appropriate sentences and to ameliorate the impact of a particular case by providing guidelines that take into account thousands of sentences from across the country. As stated in the introductory comments to the Guidelines: "As the Supreme Court noted in *Kimbrough v. United States*, 552 U.S. 85 (2007), 'Congress has shown that it knows how to direct sentencing practices in express terms.' *Id*., at 103; 28 USC §994(h)." USSG 1, Part A, 2. Continuing Evolution and Role of the Guidelines.

Thus, a sentencing court, after considering the advisory Guidelines, is free to fashion a reasonable sentence that it deems appropriate based upon the §3553(a) factors. Any sentence by a court will stand as long as (1) the record is clear that the district court considered the §3553(a) factors and (2) the sentence imposed is supported with a rationale based on the record.

While the Guidelines are merely advisory, consulting the range they suggest is the first step in determining what constitutes an appropriate sentence. After consideration of the remaining factors of 3553(a), and under the facts of this case, a 36 month term of imprisonment and three years supervised release is both reasonable and aligned with the requirement that the sentence ultimately imposed be sufficient, but not greater than necessary. The Court may give a sentence that is outside the guideline range after considering the 3553(a) factors, the following of which are particularly relevant to the instant case.

**B.      Applying the Factors of 18 U.S.C. § 3553(a) to Sean Robinson**

(1)      History of the defendant

Sean Robinson was born on August 1, 1971, in Brooklyn, New York, to Johnny Robinson and Edna-Mae Vicks. His father left the family when Sean was an infant, and did not provide support. Forced to raised 9 children on her own, Edna-Mae did the best she could. She was able to provide the bare necessity for her children, but nothing more. Sean's older sister Jackie, who lived with the family growing up, became addicted to crack at a young age. Jackie, with children of her own, would leave her kids with Edna-Mae for days at a time. However, Edna worked over 40-hours per week, and often left the kids to Sean to take care of. This forced Sean to grow up fast, and he decided to go to work as soon as he could to help his mother make ends meet.

In 1995, Sean Robinson was shot—11 times—five times in the leg, three times in the back, twice in the right arm, and once in the stomach, while walking home from a friends house in Brooklyn. He was immediately rushed The Brooklyn Hospital where doctors were able to save his life. After the shooting, the police interviewed Sean. He was able to recognize the shooters, but was fearful to identify them to the police because he knew they would retaliate. This is just one antidote of what Sean dealt with growing up. Around the same time, Sean began going down a bad path. His criminal history shows a series a bad decisions, landing him in jail on several occasions.

Mr. Robinson began to turn things around in 2001. He combined his passion for music and his business-mindedness to start a music production company and clothing line with his cousin. A short time later, fathered his first child (and three more in subsequent years). As stated in the PSR, Mr. Robinson maintains a close relationship with his children, and provides for them whenever possible. (PSR ¶ 127).

(2)      Sean Robinson's character for non-violence

In the PSR, Mr. Robinson's criminal history, although accurate, misrepresents who he really is. Mr. Robinson has a history of committing petty larceny—however frequent, his offences are non-violent and petty by nature. That is clear from the PSR. (PSR ¶¶ 106-18). Further, Mr. Robinson has been incarcerated at Metropolitan Correctional Center, in Brooklyn, NY, since April 23, 2014. During his near-16 month period of incarceration, he has not had a single disciplinary infraction. (PSR ¶ 26).

The most compelling evidence of Mr. Robinson's character for non-violence comes from a least likely source—a witness who participated in the conspiracy. In a May 5, 2015 letter, the Government met with a witness who participated in the robbery conspiracy. (Exhibit A). During that meeting, the Government reports that the witness stated that Mr. Robinson organized robberies that "did not require the use of guns." (Exhibit A). Further, the letter states that the witness had no knowledge as to whether Mr. Robinson knew of his co-defendant's possession of a gun in connection with the September 23, 2013 robbery. It is no anomaly where a cooperating witness supplies inculpating information of other participants. Here, however, a witness/participant provided specific information regarding Mr. Robinson's role, and more importantly, his character for non-violence.

| 901 Sheridan Avenue | 505 Eighth Avenue, Suite 300 | 225 Broadway, Suite 715 | Post Office Box 127 |
| --- | --- | --- | --- |
| Bronx, New York 10451 | New York, New York 10019 | New York, New York 10007 | Tenafly, New Jersey 07670 |
| Tel (718) 293-1977 | Tel (212) 967-0352 | Tel (212) 566-6213 | Tel (201) 569-1595 |
| Fax (718) 293-5395 | Fax (201) 596-2724 | Fax (212) 566-8165 | Fax (201) 596-2724 |

(3)   Sean Robinson's offense level is a misrepresentation of his role in this offense

Mr. Robinson's offense is serious and inexcusable. The conspiracy participants stole a large amounts of merchandise from major corporations. Accordingly, his base level offense is 20. As part of his plea agreement, Mr. Robinson's received a 4 level enhancement as a leader, a 7 level enhancement because a firearm was discharged during the commission of the September 23, 2015 robbery, and an additional 5 level enhancement because the victim sustained more than serious bodily injury. Mr. Robinson understands the severity of his offense and takes full responsibility for his actions. However, this offense was a conspiracy in the purest sense. Each participant had a separate and district role, where no single person was an absolute leader. In particular, Mr. Robinson, who was never present at the robberies, could not possibly control the actions of others during the commission of the robberies. Mr. Robinson understands that a conspiracy, by definition, does not require all participants to physically commit the crime. However, the 4 level "leadership" enhancement proscribed in the plea agreement is equally applicable to all co-defendants. Further, the indiscriminate 12 level weapon enhancement does not account for whether Mr. Robinson had any knowledge of co-defendant's brandishing or use of a firearm during the commission of the September 23, 2015 robbery. Without it, his guideline range would be reduced to 70-87 months.

Mr. Robinson's lack of sophistication also diminishes the likelihood that he organized the scheme alone. Mr. Robinson does not have a GED. He does not have specialized training, and his professional work history is negligible. Additionally, there were 9 other participants of conspiracy. (PSR ¶¶ 18-25). Sean Robinson's unsophisticatedness renders him seemingly incapable of orchestrating the conspiracy without aid.

(4)   Sentences of co-defendants

On July 7, 2014, co-defendant Terrell Ratliff plead guilty to Count One Conspiracy to Commit Hobbs Acts Robbery, and subsequently sentenced to 33 months imprisonment and no term of supervised release. On October 14, 2014, co-defendant Allen Williams also pled guilty to Count One Conspiracy to Commit Hobbs Act Robbery. Allen Williams, like Sean Robinson, has a Criminal History Category of III. However, Williams has a total of 6 criminal history points, where Robinson has 4.[1]

(5)   Defendant's physical condition

As stated above, in 1995 Sean Robinson was shot 11 times, 5 times in the right knee. As a result, he has difficulty walking and often feels pain in his knee. In 2006, Mr. Robinson was struck in the face with a pipe and sustained injuries to his face and eyes. To this day, Mr. Robinson suffers from distorted eyesight and blurred vision. He is currently awaiting optical surgery. (PSR ¶ 135).

(6)   Post-arrest conduct and future goals

Since April 23, 2014, Sean Robinson has been detained at MCC in Brooklyn, NY. As the PSR points out, he has had no disciplinary infractions for nearly 16 months. (PSR ¶ 26). Although he has taken GED courses in the past, Mr. Robinson is eager to attain his GED while incarcerated.

---

[1] Allen Williams' offense level was 29.

| 901 Sheridan Avenue | 505 Eighth Avenue, Suite 300 | 225 Broadway, Suite 715 | Post Office Box 127 |
|---|---|---|---|
| Bronx, New York 10451 | New York, New York 10019 | New York, New York 10007 | Tenafly, New Jersey 07670 |
| Tel (718) 293-1977 | Tel (212) 967-0352 | Tel (212) 566-6213 | Tel (201) 569-1595 |
| Fax (718) 293-5395 | Fax (201) 596-2724 | Fax (212) 566-8165 | Fax (201) 596-2724 |

He also plans to take advantage of any prison programs for which he is eligible.

Upon his release, Mr. Robinson has two main priorities; his career and, most importantly, his family. He understands that establishing a meaningful career after being a convicted of a felony is going to be difficult; but he has already has a plan for reentry. Mr. Robinson's goal is to reestablish his music production and apparel company—not just as a source of income, but to help members of his community. He finds his music company gives members of his community a vehicle to better their lives; to not become consumed by the vicious cycle of criminal activity that plagues underprivileged neighborhoods. This will also allow him to mentor his community, and stress the consequences of making the same poor choices.

Above all, Sean Robinson wants to reunite with his family. He wants to see his mother and girlfriend, and he wants to be in his children's lives. To date, he is an admittedly poor example for his children. However, permitting Mr. Robinson in their lives would, if nothing else, allow his children to learn from his mistakes.

**C.**     **Conclusion**

Forty-four year old Sean Robinson has a endured a lifetime of uphill battles—although some stem from his childhood, many are the product of his poor choices. However, evident by his non-violent character and commitment to change, Mr. Robinson can be a contributing member of society, a caring son, and a involved father. For the aforementioned reasons I request this Court sentence Mr. Robinson to 48 months imprisonment, 3 years supervised release, and a $100 mandatory assessment fee.

Respectfully submitted,

_____/s/_____
Louis V. Fasulo

Cc:     AUSA (via ECF)

**901 Sheridan Avenue**        **505 Eighth Avenue, Suite 300**        **225 Broadway, Suite 715**        **Post Office Box 127**
**Bronx, New York 10451**    **New York, New York 10019**        **New York, New York 10007**    **Tenafly, New Jersey 07670**
**Tel (718) 293-1977**            **Tel (212) 967-0352**                        **Tel (212) 566-6213**                **Tel (201) 569-1595**
**Fax (718) 293-5395**          **Fax (201) 596-2724**                      **Fax (212) 566-8165**              **Fax (201) 596-2724**